ETHEL LANDY, Plaintiff, *v.* NEW YORK LIFE INSURANCE COMPANY, Defendant.*

Supreme Court, Special Term, New York County, October 8, 1938.

* Affd., 256 App. Div. 813.

*Samuel Schacter*, for the plaintiff.

*Louis H. Cooke*, for the defendant.

McLAUGHLIN, J. This motion under rule 112 of the Rules of Civil Practice for judgment on the pleadings is made by the plaintiff, the beneficiary of a $3,000 insurance policy issued on the life of the late Harold Landy. The insurance company contends that surrender of the policy in question had been effected prior to the insured's death, and, hence, that it is only liable for the cash surrender value.

The policy contains the following provision relative to the payment of surrender value:

" SURRENDER VALUE.— In event of default in payment of premium after three full years' premiums have been paid, the following benefits apply * * *

(c) Cash Surrender Value.— If the Policy shall not have been indorsed for participating Paid-up Insurance, the Insured, within three months after such default, but not later, may surrender this Policy and all claims thereunder and receive its Cash Surrender Value as at date of default less any indebtedness hereon."

The policy took effect on June 15, 1934, and the premiums were paid up to June 15, 1938. On June 10, 1938, the insured delivered the policy to the defendant, together with a signed form requesting the payment of the cash surrender value, and in return was given a receipt on a printed form which contained the following statement: " Said papers are received without prejudice to any of the rights of New York Life Insurance Company and without committing it to any action in connection with said policy." On June 15, 1938, the annual premium of $84.36 became due, and was not paid. On June 19, 1938, the insured died. On June 20, 1938, the company mailed to the insured a check for $207.03, which covered the

cash value of the policy and which was returned to the company on the following day by the beneficiary.

On June 10, 1938, there was no default in payment of premium, and, as the policy contains no provision for the payment of cash surrender value except where there is a default, the company was at that time under no obligation to comply with such request. As any action on the insured's delivery of policy and request for cash surrender value *prior to default (June 15, 1938)* was not provided for in the terms of the policy, up to that time, at least, the request must be considered an offer on the part of the insured for a special contract. (*Fidelity Mut. Life Insurance Co.* v. *Heltsley*, 254 Ky. 453; 71 S. W. [2d] 1017; *Murphree* v. *National Life & Accident Insurance Co.*, 168 Miss. 667; 150 So. 534.) This offer would require the acceptance prior to the offerer's death. (1 Williston on Contracts [Rev. ed.], § 62.)

Had the insured's request been made *subsequent to default* it would be deemed an acceptance of the continuing offer of the insurer, contained in its policy, and the death of the insured before payment would not affect the rights of the parties. (91 A. L. R. 1452; *Lipman* v. *Equitable Life Assur. Soc.*, 58 F. [2d] 15, 18.) If the insured's request, though made prior to default, were intended to take effect after default, it would constitute an acceptance (of the insurer's continuing offer) to take effect in the future, and the rule enunciated just above would then apply and the rights of the parties would become fixed at the time of default, irrespective of the company's failure to take any affirmative action. (See Williston, *supra*, § 77A.)

There is, however, nothing in the insured's request or in the receipt issued by the insurer to indicate that the application was made in contemplation of a default on June 15, 1938, and was intended to take effect after such default. There is, therefore, no reason for holding that after June fifteenth an offer which up to that time required the insurer's acceptance was automatically transformed into an acceptance by the insured of the insurer's continuing offer.

To put the situation somewhat differently, the answer admits that the defendant, prior to the death of the insured, had expressly refused to commit itself as to whether it would accept the insured's request for the cash surrender value of the policy. At the time the request was made the company was under no obligation to comply therewith, there having been no default in the payment of premiums. The theory of the defense is that the insured's failure to pay the premium which became due on June 15, 1938, in effect constituted an acceptance by the company of the insured's request for the cash

surrender value of the policy. With this contention the court cannot agree. The omission or inaction of the insured does not constitute or take the place of the affirmative acceptance by the defendant required in order to transform the insured's offer into a binding contract. No claim is made by the defendant that it actually accepted the insured's offer prior to the latter's death.

The court's conclusion is that the request and delivery of June 10, 1938, was an offer, which required an affirmative act on the part of the defendant to ripen into a complete contract. The death of the insured on June 19, 1938, terminated the offer, so that when on June 20, 1938, the company attempted to accept, there remained no offer, and the policy continued in force.

As the grace period (Insurance Law, § 101, subd. 1) had not expired at the time of the insured's death, the plaintiff is entitled to judgment for the face amount of the policy, less unpaid premium with accrued interest thereon.

Motion is granted as indicated. Settle order.